PATERSON BREWING & MALTING CO. v. MESH & CO., Inc., et al.

(Circuit Court of Appeals, Third Circuit. February 24, 1922.)

No. 2752.

Trial ⚖=62(2)—Evidence of similar condition of other eggs stored with defendant held proper rebuttal.

In an action for damage to eggs while in cold storage, where the defense was that the damage resulted from the improper handling of the eggs by plaintiffs after they were first placed in storage, evidence that eggs placed by other parties with defendant for storage at the same time

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

were in a similar condition to plaintiffs' eggs, though they had not been improperly handled, is competent to refute the defense, and its admission in rebuttal was not erroneous, though it had some tendency to sustain plaintiffs' case in chief, and could not have been admitted for that purpose for want of proof that the other eggs, when stored, were in the same condition as those of plaintiffs.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Action by Mesh & Co., Inc., and others, against the Paterson Brewing & Malting Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

William B. Gourley, of Paterson, N. J., for plaintiff in error.

McDermott & Enright, of Jersey City, N. J. (James D. Carpenter, of Jersey City, N. J., of counsel), for defendants in error.

Before WOOLLEY and DAVIS, Circuit Judges, and ORR, District Judge.

WOOLLEY, Circuit Judge. The one assignment of error which calls for discussion is directed to a ruling upon evidence. It had its rise in wholly opposite views as to the purpose and effect of the evidence offered and admitted. Whether error is involved depends, accordingly, upon which view is correct.

The facts of the case, as pleaded and proved, are shortly these:

Speaking of the parties as they stood at the trial, the plaintiffs, in June, 1919, placed in the cold storage warehouse of the defendant at Paterson, New Jersey, 2,076 cases of eggs, gathered from many points in Iowa. When, in January, 1920, the eggs were withdrawn it was found that a large portion of them had spoiled. Thereupon the plaintiffs brought this suit for damages, charging the defendant with negligence in violating the duty of reasonable care required of a cold storage warehouseman in that it stored the eggs in a room of excessive dampness and allowed the cases to become wet; that it covered the cases with tarpaulins and tar paper in a manner that excluded the air; and that it failed to maintain the room at an even temperature, thereby causing the eggs to mold and spoil. The defendant, by its answer, traversed these allegations of negligence and in addition pleaded that the eggs were not sound when placed in its care.

On these pleadings several issues of fact were raised and vigorously contested. The most of them now stand decided by the verdict which the jury rendered for the plaintiffs. As we read the record brought here on this writ of error, we find only one open to dispute. It is this:

At the trial, the plaintiffs introduced evidence tending to prove that when placed on cold storage with the defendant the eggs were commercially good and when withdrawn they were covered with mold and were commercially bad. For the cause of this change in their condition the plaintiffs also introduced evidence tending to prove that the defendant had, against good cold storage practice, allowed frost to accumulate for an undue period on the brine pipes and water to drip upon the cases and overflow from the drip pan upon the floor.

The defendant met the plaintiffs' case on the moldy condition of the

eggs by evidence which proved that in July, during very warm weather, employees of the plaintiffs took the eggs out of storage in lots of 12 cases, removed them to the top floor of the warehouse where they unpacked, handled and repacked them and then returned them to cold storage. On this conduct the defendant based the defense that, in the movement of the eggs from a cold atmosphere to warm and from a warm atmosphere back to cold, a film of moisture accumulated on them which later developed into the mold with which the eggs were covered when withdrawn from storage in January following.

In rebuttal, the plaintiffs offered the testimony of two witnesses to prove that 12 carloads of eggs collected in Minnesota, Kansas, Iowa, Illinois, Missouri and Tennessee and placed by them in the defendant's cold storage warehouse in the same month in which the plaintiffs stored their eggs and for substantially the same period had molded and spoiled. The court admitted this testimony over objection by the defendant that such testimony is not admissible except in the plaintiffs' case in chief and is admissible then only on showing a condition of witnesses' eggs similar to the condition of the plaintiffs' when put in storage. There was no evidence of similarity of condition. This is the principal error charged against the court on this writ. If this rebuttal evidence was offered in proof of the plaintiffs' case as pleaded, and if it was all the evidence so offered, there might be substance in the defendant's contention. But the testimony of the two witnesses as to the moldy condition of their eggs on withdrawal from cold storage was not introduced by the plaintiffs to prove their case as pleaded, but to meet the defense that the plaintiffs' eggs had acquired their mold when in July they had been resorted and rehandled in a warm room. The testimony of one witness was made relevant by his further testimony that his eggs had not been rehandled but had remained in the defendant's cold storage room continuously from the time they were deposited until they were withdrawn. The testimony of the other witness was made relevant by his further testimony that after placing his eggs in cold storage with the defendant he did, pursuant to prevailing practice, rehandle and repack them to prevent mold from breakage, and that, on withdrawing his eggs, they showed no breakage, yet were moldy. While, admittedly, this testimony strengthened the plaintiffs' case as pleaded in their complaint, it also raised a valid inference, if the jury chose to draw it, that the mold on the plaintiffs' eggs came not from rehandling, as the defendant had contended, but, as with the eggs of the two witnesses, it came from the defendant's alleged negligence in maintaining dripping pipes and a damp room. Rudell v. Cold Storage Co., 136 Mich. 528, 530, 99 N. W. 756. Being offered and admitted for this purpose, and with this effect, we are of opinion that the testimony was strictly in rebuttal and was admissible.

Finding no error in the trial we direct that the judgment below be affirmed.